T.C. Memo. 1998-420


UNITED STATES TAX COURT


JUAN M. AND MIRIAM J. VILLARREAL, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10897-97, 20658-97,    Filed November 19, 1998.
             20659-97.


<u>Lorenzo Wilson Tijerina</u>, for petitioners.

<u>Franklin R. Hise</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOLDBERG, <u>Special Trial Judge</u>:  These consolidated cases
were heard pursuant to the provisions of section 7443A and Rules
180, 181, and 182.[2]  In docket No. 10897-97, respondent

---

[1]    Consolidated herewith are the following cases:  Miriam
Villarreal, docket No. 20658-97, and Juan Villarreal, docket No.
20659-97.

[2]    Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
                                          (continued...)

determined a deficiency in petitioners' joint Federal income tax for the 1994 tax year in the amount of $6,007. In separate notices of deficiency mailed to petitioners Juan M. Villarreal and Miriam J. Villarreal, respondent determined that each of them is liable for a deficiency and addition to tax under section 6651(a)(1) for the 1995 tax year in the amounts of $4,695 and $1,173.75, respectively.

Petitioner Juan M. Villarreal filed a petition for redetermination for the 1995 taxable year at docket No. 20659-97 and petitioner Miriam J. Villarreal filed a petition for redetermination for the 1995 taxable year at docket No. 20658-97. Petitioners are husband and wife. References to petitioner are to Juan M. Villarreal and references to petitioner wife are to Miriam J. Villarreal.

After concessions,[3] the issues for decision are: (1) Whether petitioners are entitled to claim Schedule C expense deductions in the amount of $22,400 for the 1994 year; (2) whether each petitioner failed to report his or her separate

---

[2](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]     Petitioners reported a $10,000 capital gain on Schedule D of Form 1040 for the 1994 tax year, but failed to carry that amount over to line 13 of their 1994 tax return. Though petitioners initially contended that the $10,000 amount was a tax-free return of capital, petitioners now concede that the $10,000 amount should be treated as long-term capital gain for the 1994 tax year.

share of taxable community property income for the 1995 taxable year and the correct amount of such income; (3) whether each petitioner is liable for self-employment tax for the 1995 tax year; and (4) whether each petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file a Federal income tax return for the 1995 tax year.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in San Antonio, Texas.

### FINDINGS OF FACT

In 1994, petitioner worked for Alamo Body and Paint (Alamo) in San Antonio. In late 1994, petitioner quit his job at Alamo and decided to open a restaurant called Villa Cabana.

Petitioners signed a 3-year lease for commercial space in San Antonio, bought equipment, and stocked the restaurant with food and supplies. Petitioners also attended courses in food handling and arranged for business and health department licensing. After some initial difficulty with a natural gas leak, Villa Cabana opened for business on December 23, 1994.

Beginning in 1995, petitioners hired additional people to work in the restaurant, but the record is not clear as to the type of work performed by the additional help. Petitioner worked as the restaurant cook and petitioner wife waited tables. Petitioner also purchased supplies for the restaurant.

Petitioners operated the restaurant until their lease expired in 1997.

The law and accounting firm of Lorenzo Wilson Tijerina (Mr. Tijerina) maintained Villa Cabana's financial records and prepared petitioners' 1994 Federal income tax return. Mr. Tijerina's firm kept Villa Cabana's financial records and canceled checks for the 1994 and 1995 tax years, but misplaced the canceled checks during an office move. Mr. Tijerina's firm was unable to locate the canceled checks in time for trial.

In the notice of deficiency for the 1994 tax year, respondent disallowed petitioners' claimed Schedule C business expense deductions in the amount of $22,400. Petitioners did not file a 1995 Federal income tax return. Accordingly, in separate notices of deficiency, respondent determined, using Bureau of Labor Statistics (BLS) data, that petitioners, who resided in a community property State, were each taxable on income of $19,775, as well as community property interest income of $55 for the 1995 tax year which they failed to report.

At trial, petitioner conceded that they earned gross income in the amount of $83,083.90 from the operation of the Villa Cabana restaurant in the 1995 tax year.

OPINION

1. Schedule C Expense Deductions for the 1994 Tax Year

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred * * * in carrying on any

trade or business".  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deductions claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Taxpayers must substantiate any deductions claimed and bear the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Taxpayers are required to maintain adequate records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

A taxpayer's inability to produce records does not relieve the taxpayer of the burden of proof.  See Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

At trial, petitioners submitted transaction reports prepared for petitioners by Mr. Tijerina's firm for the 1994 and 1995 tax years.  Petitioners also submitted bank records for a 1-year period beginning on December 31, 1994, and ending on December 7, 1995.  Mr. Tijerina's firm used the 1994 transaction report to prepare petitioners' 1994 Federal income tax return.  As previously stated, canceled checks which could have substantiated petitioners' 1994 and 1995 business expenses were lost by Mr. Tijerina's firm when that firm moved offices.

When a taxpayer's records are lost or destroyed through circumstances beyond his control, he is entitled to substantiate deductions by reconstructing his expenditures through other credible evidence. Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). This Court is not bound to accept unverified, undocumented testimony of a taxpayer. Hradesky v. Commissioner, supra at 90.

The transaction records prepared by Mr. Tijerina's firm listed most expenditures by category and check number, but certain check numbers were repeated in different columns in the transaction records for purported business expenses incurred by petitioner at several different locations on different days. The check numbers listed in the transaction reports did not match check numbers listed in petitioners' bank records, which were apparently from petitioners' personal account.

Additionally, amounts listed as expenses on petitioners' 1994 transaction record did not match petitioners' claimed Schedule C expense deductions for the 1994 tax year. The transaction record itself also miscategorized some of petitioners' expenses for the 1994 tax year.

At trial, petitioner offered no testimony that petitioners contacted utility companies, food suppliers, insurance offices, or their former landlords for copies of receipts or other records in an effort to substantiate deductions for the 1994 tax year.

If the item is deductible, but the taxpayer is unable to substantiate it, the Court should make as close an approximation as it can. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The estimate, however, must have a reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In making an estimate, the Court may bear heavily upon the taxpayer, whose inexactitude is of his own making. Cohan v. Commissioner, supra at 543-544.

Accordingly, this Court will make as close an approximation as we can where a reasonable evidentiary basis exists.

a. Advertising Expenses

Petitioners claimed Schedule C advertising expense deductions in the amount of $1,859 on their 1994 Federal income tax return. Petitioners incurred this expense in purchasing an 18-foot neon sign which was apparently attached to the outside of Villa Cabana.

Under section 263, any amount paid for capital expenditures may not be currently deducted. Commissioner v. Idaho Power Co., 418 U.S. 1, 16 (1974). Capital expenditures include fixtures and similar property having a useful life substantially beyond the taxable year. Sec. 1.263(a)-2(a), Income Tax Regs. Signs with a useful life of more than 1 year must be capitalized. See Alabama Coca-Cola Bottling Co. v. Commissioner, T.C. Memo. 1969-123.

Though petitioners claimed the $1,859 amount as an advertising expense deduction on Schedule C of their 1994 Federal

income tax return, petitioners' counsel conceded at trial that the expense was miscategorized and did not qualify as an advertising expense deduction.

On the basis of the record, we find that petitioners expended $1,859 for a sign and hold that petitioners must capitalize the cost of the sign as a capital expenditure and not as a Schedule C advertising expense deduction for the 1994 tax year.

b. <u>Equipment</u>

Petitioners reported equipment costs of $10,000 on Form 4562 for the 1994 tax year and elected to expense that amount under section 179. Petitioners also claimed depreciation deductions in the amount of $884 on 3-year property with a depreciation basis of $2,652. In total, petitioners claimed depreciation and section 179 expense deductions in the amount of $10,884 for the 1994 tax year.

Petitioners did not claim the $10,884 amount on Schedule C, line 13, which lists depreciation and section 179 expense deductions, but did report a $10,884 amount on Schedule C, line 10 entitled: "Car and truck expenses". It is unclear whether petitioners mistakenly reported the $10,884 amount on the wrong line of their Schedule C, or whether petitioners are claiming an additional $10,884 in car and truck expense deductions for the 1994 tax year. Petitioners' car and truck expenses are discussed in c., <u>infra</u> p. 10.

Section 179 permits a taxpayer to make an election to expense the cost of section 179 property. Sec. 179(a). The amount allowed a taxpayer as a deduction under section 179 can not exceed the aggregate amount of taxable income of the taxpayer for such taxable year which is derived from the active conduct by the taxpayer of any trade or business during such taxable year. Sec. 179(b)(3)(A). A taxpayer may carry over a deduction disallowed under section 179(b)(3)(A) to another taxable year. Sec. 179(b)(3)(B).

Petitioners' 1994 transaction report expense amounts do not match the amounts reported on petitioners' 1994 Federal income tax return even though both documents were prepared by Mr. Tijerina's firm. Petitioner, using his 1994 transaction report, testified that petitioners purchased refurbished stoves and other equipment in 1994 for Villa Cabana at a total cost of $6,000.04.

Once again, we note the absence in the record of any testimony or other evidence which would indicate that petitioners attempted to substantiate their claimed deductions by contacting the vendor from which they purchased the restaurant equipment. Petitioners testified that they bought the equipment used, but the record does not indicate the condition of the equipment. Petitioners have failed to offer any reasonable evidentiary basis by which this Court could make a close approximation or estimate of petitioners' claimed deductions.

In this instance, any attempt on the part of this Court to estimate petitioners' depreciation or section 179 deductions, or petitioners' basis in any equipment they may have purchased, would amount to little more than guesswork. Therefore, we hold that petitioners are not entitled to such deductions because they have failed to substantiate the underlying cost of the assets on which the deductions are claimed.

c. <u>Car and Truck Expenses</u>

Though petitioners claimed car and truck expense deductions in the amount of $10,884 on Schedule C of their 1994 Federal income tax return, they did not list car and truck expenses on their 1994 transaction report.

Petitioner testified that he shopped for restaurant supplies and produce but did not present any substantiating evidence regarding the business use of petitioners' vehicle. Much of petitioner's shopping took place at stores within the same shopping center as Villa Cabana, and we have no evidence as to petitioners' vehicle use, mileage, or even the method petitioners used in arriving at the $10,884 amount.

Indeed, the car and truck expense deduction amount claimed by petitioners may be a mistaken entry, since petitioners claimed depreciation and section 179 expense deductions in the amount of $10,884 on Form 4562, but did not report that amount on Schedule C, line 13.

On the basis of the record, we find that there is no credible evidence supporting petitioners' claimed car and truck expense deductions.  We hold that petitioners are not entitled to claim car and truck expense deductions in the amount of $10,884 for the 1994 tax year.

d.  Rent, Utility, and Telephone Expenses

Petitioners claimed "other expense" deductions in the amount of $4,463 on Schedule C of their 1994 Federal income tax return.  Petitioners' "other expense" deductions included the following amounts:

| | |
|---|---|
| Rent expense | $3,510 |
| Electricity deposit | 800 |
| Telephone deposit | 60 |
| Credit card fees | 93 |
| Total | 4,463 |

Petitioners' claimed rent expense deductions for the 1994 tax year also included a payment in the amount of $1,755 for the last month's rent.  Petitioners did not close Villa Cabana until 1997.  At the time of trial, petitioner was using the rent deposit from the restaurant to pay his 1998 personal living expenses.

Petitioners also claimed deductions for telephone and utility deposits made during the 1994 tax year.  These deposits would presumably be refunded to petitioners when petitioners later canceled utility and telephone service to Villa Cabana in 1997.

Petitioners additionally claimed utility expense deductions in the amount of $142 on line 25 of their 1994 Schedule C. This amount represented utilities actually used by petitioners at Villa Cabana.

At trial, petitioner did not offer any testimony which would indicate any attempt to substantiate petitioners' "other expense" deductions for the 1994 tax year by contacting petitioners' former utility, telephone, or credit card companies.

We do, however, find petitioner's testimony credible that petitioners paid $1,755 a month in rent for commercial space in San Antonio. We hold that petitioners are entitled to deduct "other expenses" in the amount of $1,755 for rent expenses incurred for December of the 1994 tax year. Petitioners are not entitled to deduct the $1,755 deposit for the last month's rent.

We also find that petitioners incurred utility expenses for December in the amount of $142 as reported by petitioners on Schedule C of their 1994 Federal income tax return. Petitioners cannot deduct utility or telephone deposits made during the 1994 tax year.

e. Insurance

Petitioners contend that they carried a business liability policy for the years at issue. Though petitioners' 1994 transaction reports list insurance expenses of $479, petitioners did not claim any deduction for insurance expenses on their 1994

Schedule C. Petitioners' 1995 transaction report lists monthly insurance payments in the amount of $113.36.

On the basis of the record, we are satisfied that petitioners paid regular monthly premiums for business liability insurance. Accordingly, we hold that petitioners are entitled to a deduction in the amount of $113.36 for the 1994 tax year representing expenses incurred for business insurance for the month of December 1994.

f. <u>Food, Restaurant Supplies, and Soda Purchases</u>

Though petitioners' 1994 transaction report lists expenses for food, restaurant supplies, and soda in the amount of $4,565.74, petitioners did not claim expense deductions for food, restaurant supplies, or soda purchases on their 1994 Schedule C.

Petitioners did not purchase food and cleaning supplies from just one vendor. In order to get the lowest price, or for convenience if the store was in the same shopping mall as Villa Cabana, petitioners would purchase restaurant items at different stores. Petitioners' 1994 transaction report indicates, however, that petitioners purchased soda from only one commercial restaurant supply vendor. Once again, the record does not indicate that petitioners made any attempt to contact vendors in order to substantiate food, restaurant supplies, or soda expenses for 1994.

Though petitioners' 1994 transaction report lists expenses for food, restaurant supplies, and soda in the amount of

$4,565.74, petitioner testified that business was "real slow" and that petitioners only earned approximately $350 in the 1 week that petitioners were open for business in the 1994 tax year.

Petitioners did not calculate cost of goods sold or keep an inventory for the 1994 tax year.  Other than testifying that the restaurant earned $350 for the last week of December, petitioner did not know how much food, soda, or restaurant supply costs were actually incurred in the 1994 tax year.  In 1995, petitioners continued to use food, restaurant supplies, and soda that was not sold or consumed in the 1994 tax year.

On the basis of the record, we find that petitioners incurred food, restaurant supplies, and soda expenses in the amount of $556 for the 1994 tax year.

g.  Repair and Maintenance Expenses

Petitioners claimed repair and maintenance expense deductions in the amount of $5,797 on Schedule C of their 1994 Federal income tax return.  These deductions represented costs incurred by petitioners for repair of used equipment purchased from equipment vendors, and the installation and repair of plumbing fixtures.

Petitioner could not recall why some of the labor was performed, and there is nothing in the record to indicate that petitioners made any attempt to contact service people to substantiate petitioners' claimed deductions.  Furthermore, some of petitioners' claimed repair and maintenance expenses appear to

be startup expenditures which would not be currently deductible under section 195. Petitioners have failed to offer any reasonable evidentiary basis by which this Court could make a close approximation or estimate of petitioners' claimed deductions.

We find that any attempt on the part of this Court to estimate petitioners' repair and maintenance expense deductions would amount to little more than guesswork because petitioners have not provided credible evidence supporting petitioners' claimed repair and maintenance expense deductions. Therefore, we hold that petitioners are not entitled to claim repair and maintenance expense deductions in the amount of $5,797 for the 1994 tax year.

h. <u>Legal and Professional Services</u>

Petitioners claimed legal and professional services expense deductions in the amount of $806 on Schedule C of their 1994 Federal income tax return. It appears from the record that most, if not all, of petitioners' claimed legal and professional services expense deductions represented expenses for legal and accounting work performed by Mr. Tijerina's firm.

Despite the fact that petitioners were represented by the same accounting and legal firm at trial as they were for the time petitioners operated Villa Cabana, neither counsel for petitioners nor petitioners themselves produced any

substantiation for these expenses other than the transaction reports prepared by Mr. Tijerina's firm.

If petitioners incurred legal and professional services expenses from other firms, the record does not show that petitioners attempted to contact the providers of such services in an attempt to substantiate petitioners' deductions.

We find that this Court does not have a reasonable evidentiary basis by which to estimate petitioners' claimed legal and professional services expense deductions. We therefore hold that petitioners are not entitled to claim any legal and professional services expense deductions for the 1994 tax year.

i. Tax and Licenses

Petitioners claimed tax and license expense deductions in the amount of $305 on Schedule C of their 1994 Federal income tax return. Most of these expenses would have been recorded by Government departments or agencies, and yet the record does not show that petitioners attempted to contact any of the agencies involved in an attempt to substantiate petitioners' claimed deductions.

On the basis of the record, we find that petitioner has failed to provide a reasonable evidentiary basis to substantiate their tax and license expense deductions. Accordingly, we hold that petitioners are not entitled to claim tax and license expense deductions for the 1994 tax year.

j.  Travel, Meal, and Entertainment Expenses

Petitioners claimed travel, meal, and entertainment expense deductions in the amount of $6, subject to a 50 percent limitation on Schedule C of their 1994 Federal income tax return. Petitioners have not substantiated or explained this expense deduction and have not shown that this expense was incurred in carrying on a trade or business as required by section 162.

We find that petitioners have not complied with the requirements of section 162 and hold that petitioners are not entitled to claim meals and entertainment expense deductions for the 1994 tax year.

2.  Petitioners' 1995 Income

As previously found, petitioners failed to file a Federal income tax return for the 1995 tax year. Using BLS data, respondent determined that petitioners each earned income of $19,775, as well as community interest income of $55 for the 1995 tax year.

At trial, petitioner admitted that for 1995 the restaurant generated gross income in the amount of $83,083.90. Based on petitioner's admission, we find that the $83,083.90 amount is a more accurate measure of gross income than respondent's use of BLS data, and, therefore, we find that petitioners earned total gross income in the amount of $83,083.90 from the restaurant for the 1995 tax year.

Petitioners contend that they are entitled to claim Schedule C business expense deductions in the amount of $78,573.34.

Petitioners have not presented any substantiation for their 1995 business expense deductions other than their 1995 business transaction report prepared by Mr. Tijerina's firm.  However, we acknowledge that petitioners operated the restaurant, and, therefore, must have incurred deductible business expenses.

Applying the Cohan rule discussed above, this Court will make as close an approximation as we can in order to estimate petitioners' business expense deductions for the 1995 tax year. In doing so, we once again stress that petitioners have made no effort to reconstruct their business expense deductions by contacting vendors who conducted business with Villa Cabana in the 1995 tax year.

We find that petitioners incurred the following deductible business expenses for the 1995 tax year:

| | |
|---|---|
| Rent | $22,815 |
| Sales tax | 1,432 |
| Advertising | 700 |
| Food, restaurant supplies, and soda | 7,674 |
| Insurance | 1,173 |
| Linen service | 169 |
| Office expenses | 158 |
| Contract labor | 3,495 |
| Utilities | 1,825 |
| Total | 39,441 |

Though petitioners claim business expenses in excess of that amount, we find that petitioners were unable to present any credible evidence to substantiate any amounts except the

deductions stated above.  We hold that petitioners are entitled to claim Schedule C business expense deductions in the amount of $39,441 for the 1995 tax year.

3.  Self-Employment Tax

Section 1401 imposes a tax on the self-employment income of every individual.  The tax is a combination of the old-age, survivors, and disability insurance tax, and the hospital insurance tax.  Sec. 1401(a) and (b).  The self-employment tax is similar to the tax employers are required to pay and withhold from the wages of their employees under the Federal Insurance Contribution Act (FICA tax).  Both the self-employment tax and the FICA tax provide individuals with coverage for Social Security retirement benefits and hospital insurance benefits.

Section 1402(a) provides that, for purposes of the self-employment tax, the term "net earnings from self-employment" includes the gross income derived by an individual from any trade or business carried on by the individual, less the deductions allowed that are attributable to the trade or business.  Section 1402(c) provides that the term "trade or business", when used with reference to net earnings from self-employment, has the same meaning as when used in section 162, with certain exceptions that are not relevant to the instant case.

On the basis of the record, we find that petitioners were self-employed for the 1995 tax year and hold that petitioners are

liable for self-employment tax under section 1401 for the 1995 tax year. Respondent is sustained on this issue.

4. Additions to Taxes

Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return. The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. Sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. Id.

The addition is applicable unless a taxpayer establishes that the failure to file was due to reasonable cause and not willful neglect. Id. If a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return within the date prescribed by law, then reasonable cause exists. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Willful neglect" means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

When an expert provides erroneous advice on a matter of tax law, such as whether a tax liability exists, it may be reasonable for a taxpayer to rely on that advice. United States v. Boyle, Id. at 250-251.

Petitioner did not offer any testimony or other evidence which indicated that petitioners' failure to file a return for

the 1995 tax year was due to erroneous expert advice. We note that at the time of trial, petitioners had not yet filed a return for the 1995 or 1996 tax year. When asked about his failure to file a return for the 1996 tax year, petitioner testified that though he knew he had the liability to file a return, he had not, and did not have a reason for his failure to file.

We find that petitioners did not exercise ordinary business care and prudence and that petitioners' failure to file was due to willful neglect. We therefore hold that petitioners are liable for additions to taxes under section 6651(a)(1). Respondent is sustained on this issue.

To reflect the foregoing,

Decisions will be entered under Rule 155.[4]

---

[4] If, under a Rule 155 computation, the recomputed deficiencies are in excess of those set forth in the notices of deficiency for the 1995 tax year, respondent is limited to the deficiencies set forth in the separate notices of deficiency because respondent failed to plead any increased deficiencies.