T.C. Memo. 2008-5

UNITED STATES TAX COURT

CURTIS G. LOCKETT AND EDNA L. LOCKETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10374-05.                    Filed January 14, 2008.

Curtis G. Lockett and Edna Lockett, pro sese.

<u>William J. Gregg</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax of $3,049, $32,675, and $2,581
for taxable years 2001, 2002, and 2003, respectively.  The issue
for decision is whether respondent correctly determined the
amounts of petitioners' deductions for these years.  Unless
otherwise indicated, all Rule references are to the Tax Court

Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

## Background

When they petitioned the Court, petitioners resided in Florida.

Petitioners filed joint Federal income tax returns for the years at issue.  In the notice of deficiency, respondent disallowed the following amounts of deductions that petitioners claimed on their returns:[1]

|  | 2001 | 2002 | 2003 |
|---|---|---|---|
| Itemized deductions | $480,776 | $12,419 | $26,015 |
| Business expenses | 61,632 | 1,065,543 | 64,931 |
| Theft/destruction of property losses | 36,000 | 1,500,000 | -- |
| Moving expenses | -- | 41,952 | -- |

Petitioners timely petitioned this Court.  At the time of trial, the parties had entered into no stipulations, contrary to Rule 91(a) and the Court's standing pretrial order.  Petitioners also failed to comply with the Court's order, dated May 8, 2006, granting respondent's motions to compel production of documents and to compel responses to interrogatories.  The case was

---

[1] In the notice of deficiency, respondent also determined that petitioners had unreported dividend income of $113 and $248 for 2001 and 2003, respectively, and unreported interest income of $16 for 2002.  Respondent also determined that petitioners owed $30 additional tax for the early distribution of retirement income pursuant to sec. 72(t).  Petitioners have not assigned error to these determinations either in their pleadings or at trial.  Consequently, we sustain respondent's determinations as to these items.

submitted on the basis of a sparse record consisting of petitioner husband's testimony and limited documentary evidence.

## Discussion

### A.    In General

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden to prove that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]  Deductions are a matter of legislative grace, and a taxpayer must prove entitlement to claimed deductions.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer must keep sufficient records to substantiate any deductions claimed.  Sec. 6001.  In the event that a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, the Court may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

### B.    Casualty and Theft Losses

Petitioners challenge respondent's disallowance of various deductions they have claimed for casualty and theft losses.

---

[2] Petitioners have not alleged and the record does not support a conclusion that the burden of proof is shifted to respondent pursuant to sec. 7491(a).

Section 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." For individuals, the deduction is available only for: (1) Losses incurred in a trade or business; (2) losses incurred in transactions entered into for profit; or (3) losses of property not connected with a trade or business or with a transaction entered into for profit, if such losses arise from "fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c).

The amount of a casualty or theft loss is generally limited to the lesser of the property's reduction in fair market value or the property's adjusted tax basis. Secs. 1.165-7(b)(1) and 1.165-8(c), Income Tax Regs. Petitioners bear the burden of proving both the occurrence of a casualty or theft within the meaning of section 165 and the amount of the loss. See Rule 142(a); Elliott v. Commissioner, 40 T.C. 304, 311 (1963).

A casualty loss deduction under section 165(a) is allowed only for the taxable year in which the loss was sustained. Sec. 1.165-7(a)(1), Income Tax Regs. If the taxpayer has a reasonable prospect for recovering the loss (for example, through insurance or a lawsuit), no portion of the loss is treated as being sustained until it can be ascertained with reasonable certainty that the taxpayer will not receive reimbursement. Sec. 1.165-1(d)(2), Income Tax Regs. A taxpayer has a reasonable prospect

for recovery if there is a bona fide claim for recoupment and a substantial possibility that the claim will be decided in the taxpayer's favor.  Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975).

1.  Claimed Destruction of Home and Illegal Foreclosure

Petitioners assign error to respondent's disallowance of $467,900 of casualty and theft losses that were included among the $480,776 total itemized deductions that petitioners claimed on their 2001 Federal income tax return.[3]  Petitioners contend that the disputed $467,900 of casualty and theft losses arose, in undifferentiated fashion, from the burning of their house in 1994 and from an illegal foreclosure action in 2001, apparently with respect to the property where the destroyed house formerly stood. Petitioners contend that although their house was destroyed in 1994, they claimed the casualty loss in 2001 because it was then that litigation against an insurance company to recover the value of the home proved unsuccessful.

The record is far from clear about the circumstances of the alleged destruction of petitioners' house and the litigation to

---

[3] Petitioners have not otherwise assigned error to respondent's disallowance of the itemized deductions that they claimed for 2001, 2002, and 2003, other than the $467,900 of casualty and theft losses claimed on their 2001 Federal income tax return.  We deem petitioners to have conceded respondent's determinations with respect to all of their itemized deductions other than the $467,900 item.  In any event, petitioners have failed to substantiate any of these itemized deductions.

recover the value of the house. Even if we were to assume, however, for purposes of argument, that 2001 was the proper year for petitioners to claim a deduction for the alleged destruction of their house in 1994, petitioners have failed to prove the fair market value of the house or to produce evidence that would allow us to reasonably estimate its value.[4] Furthermore, petitioners have failed to prove their adjusted basis in the house, thereby

---

[4] Petitioners' explanations as to their lack of supporting documentation are unconvincing and unsatisfactory. At trial, in response to an inquiry as to whether he had evidence as to the amount of unreimbursed loss, petitioner husband stated incongruously: "Yes, sir. I don't have that. I don't know if I have it or not." Petitioner husband testified that at least some of the relevant documents were in a trailer that "was stolen by two people who worked for the government." Petitioner husband initially testified that petitioners "didn't have the money to get the trailer back." Subsequently, petitioner husband testified, inconsistently: "even after we got the trailer, we didn't have, we couldn't move it. We had no way to move the trailer from off the person's property to where we could go through it." Petitioner husband also testified that although petitioners had additional records in a "storage facility" with "files all the way to the door", they were unable to open the door of the storage facility to go through the files.

Petitioner husband attempted to establish the value of the house by testifying that certain bids, ranging from $200,000 to $245,000, were received to replace the house. The only documentary evidence offered in support of this testimony, however, was a brief prepared by petitioners in connection with an Alabama State court proceeding in 2002. Petitioners otherwise submitted no documentary evidence to show that such bids were ever received or that any appraisal was ever made. Petitioner husband's self-serving statements in this proceeding and petitioners' statements in briefs purportedly filed in other court proceedings are insufficient to establish the property's reduction in fair market value. See Ganas v. Commissioner, T.C. Memo. 1990-143, affd. without published opinion 943 F.2d 1317 (11th Cir. 1991); Marcus v. Commissioner, T.C. Memo. 1988-3.

precluding the allowance of any casualty loss deduction with respect to their house.  See Zmuda v. Commissioner, 79 T.C. 714, 727-728 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968).[5]

Petitioners contend that additional losses of an indeterminate amount arose from an illegal foreclosure action in 2001, which they characterize as a theft.  This Court has previously questioned whether an illegal foreclosure action is a theft for purposes of section 165(c).  See Johnson v. Commissioner, T.C. Memo. 2001-97.  We need not decide this issue, however, because petitioners have failed to show that the alleged foreclosure action was illegal and have also failed to substantiate the amount of the alleged losses.  Accordingly, we sustain respondent's determination.

2. Claimed Loss of Computer Equipment

On their 2001 Federal income tax return, petitioners claimed negative $36,000 as "Other gains or (losses)."  On their 2002 Federal income tax return, petitioners claimed negative $1.5 million as "Other income."  Petitioners claim that these amounts represent losses arising from the theft and destruction of a

---

[5] Petitioner husband testified, without reference to any supporting evidence, that petitioners paid $115,000 for the property.  Petitioners otherwise have offered no evidence to establish the adjusted basis of their house.

computer system and possibly other personal property. Respondent disallowed these claimed losses for lack of substantiation.[6]

At trial, petitioner husband produced photographs showing personal computer equipment and other items of personal property piled into the back of a pickup truck and lying along a roadside. Petitioner husband contends that "the government came in with no legal basis and just took everything and put it out on the side of the road" because he had refused to turn over research that the Government wanted. Petitioner husband's contention, as best we understand it, is that his personal computer was worth $1.5 million because of the value of technology that he had created and installed on the computer.

Petitioners have failed to prove that a theft occurred. Moreover, petitioners have neither established the fair market value of the property alleged to have been stolen nor provided sufficient evidence to allow the Court to estimate any of the property's value.[7] See sec. 1.165-8(c), Income Tax Regs.

---

[6] In the notice of deficiency, in showing his income tax examination changes, respondent listed the disallowance of these losses under "Adjustments to Income" as "Other Income". The accompanying explanation noted that these adjustments were in disallowance of petitioners' claimed losses of these amounts. In their petition, petitioners attempt to recharacterize respondent's disallowance of these claimed losses as erroneous determinations of unreported income and assign error on that basis. Petitioners' contentions are without merit.

[7] Petitioners allege that a third party was prepared to pay $1.5 million for this equipment, presumably before its alleged

(continued...)

Furthermore, petitioners have not established their adjusted basis in the property that they allege was stolen.  See id.  We sustain respondent's disallowance of petitioners' claimed $36,000 theft loss for 2001 and their claimed $1.5 million theft loss for 2002.

C.   Moving Expenses

On their 2002 Federal income tax return, petitioners claimed a $41,952 deduction for moving expenses.  Petitioners argue that they are entitled to the deduction because in 2002 they moved from Mobile, Alabama, to Florida.

Generally, a taxpayer may deduct moving expenses paid or incurred during a year in connection with beginning qualifying work at a new location.  Sec. 217(a).  Petitioners have failed to substantiate the claimed moving expenses or to show that the requirements of section 217(a) have been met.

D.   Business Expenses

Respondent disallowed petitioners' claimed business expenses for all 3 years:  $61,632 in 2001; $1,065,543 in 2002; and $64,931 in 2003.  At trial, petitioner husband contended that $1 million of the claimed business losses in 2002 was due to "bad

_____

[7](...continued)
destruction.  Petitioners have not, however, identified this third party and have produced no other evidence of such an offer.

debts" but provided no supporting evidence.  Petitioners have failed to substantiate these claimed business expense deductions.

E.   Conclusion

Petitioners have failed to meet their burden to prove that respondent's determinations were in error.

In the light of the foregoing,

An appropriate order and decision will be entered.